185570 United States of America v. Jeffrey Isaac. Oral argument not to exceed 15 minutes per side. Ms. Lewis for the defendant appellant. Good morning. May it please the court, Mr. Grant. I have reserved 3 minutes for rebuttal. Alright. My name is Athenasia Lewis. I'm here today to speak on behalf of Mr. Jeffrey Isaac who has appealed from the United States District Court for the Eastern District of Kentucky. My first argument, it's substantial legal error to allow Officer Hamilton to narrate his interpretations of what was seen and said on the recordings. When the jury could make those determinations based on the recordings alone. Objections to Officer Hamilton's narration and interpretation of those recordings should have been sustained. In Thomas, and I quote, the trial judge must... Ms. Lewis, could I just ask you right starting out, assuming you're right about all of your arguments. Yes, sir. It just seems like what's left is this overwhelming evidence in this case. How do you overcome that? Your Honor, if I may, I realize that our brief was ambiguous as to Officer Atkins having been qualified as an expert witness. I'd like to straighten that out. I'm thankful and appreciate the opportunity to be able to do that today. In fact, Officer Atkins was qualified as an expert witness specifically as to firearms and drugs. However, his testimony given prior to his being qualified as an expert was basically the same situation as Officer Hamilton. Was it objected to at trial? It was objected to at trial, actually. I believe it was objected to several different times at trial. And ongoing objections were made the same as they were made during Officer Hamilton's testimony. The difference in... Well, let's say you throw that out too, although I don't know why we would. But you still have Osborne's testimony. Osborne, Your Honor, had several issues with credibility and without the officer... That's why we have juries. Well, I'd say that the jury was prejudicially influenced by both officers giving narration and interpretation of a tape that spoke for itself. How about everything they found in the house? Again, I believe... They find guns. It all is corroborated by what everybody says. I just don't... I'm missing something. As far as the evidence shows, Your Honor, yes, they did find drugs. They did find some firearms. As far as the corroboration of those items, that could not be corroborated by anyone except for the confidential informant who, again, had some serious issues. The search would not have been valid without the confidential informant. So my point with the confidential informant would be that he was a known drug addict. He was charged currently during his testimony with a felony and admittedly was medicated during his testimony. It's more than obvious, to me anyway, that the confidential informant's testimony standing alone was not credible. Would not have carried as much weight with the jury without the perceived interpretation of what was happening and what was being said by both officers in this case. Likely a different outcome would have been reached by the jury but for that, which would be our position on the situation. Do you have any authority for that? In Thomas, Your Honor, I do. The court in Thomas specifically states, and the rule is bore out in Thomas, but specifically states that the trial judge must ensure that any and all testimony and or evidence admitted is not only relevant but reliable. And I believe the court on its own here, by its admonishment to the jury during Officer Atkins' testimony and its instruction to the jury in jury instruction number 20, a cautionary instruction over Officer Atkins' testimony, shows that the court did not really rely on that testimony wholly. And perhaps should have, on its own, according to Thomas, made sure that that evidence was reliable before allowing the jury to hear it. There was no expert testimony qualifications for Officer Hamilton at all. And as far as Officer Atkins is concerned, the only qualifications that he was specifically qualified to testify about were, again, the guns and the drugs. Can you point to a single thing that either of these officers testified to that wasn't true? Well, I can point to specific things that these officers testified to that should have been spoken for themselves as far as the tape is concerned. Now, as far as the tape is concerned, I do believe the tape, as the court themselves states, they bear out the facts that Officer Hamilton was testifying to. So why Officer Hamilton would be giving layperson testimony about a tape that a layperson can supposedly perceive for themselves is beyond me. If a person testifies to something and they don't have the qualifications to do it, or they testify falsely in some way, then having allowed them to testify is obviously a significant problem. But if somebody testifies as a lay witness that perhaps should have been qualified as an expert, and there's no dispute as to what they said is accurate, I'm having trouble finding, I'm having trouble following then why that would constitute a reversible error here. Well, I would say that if there were portions of the tapes that were not clear, or there were portions of the tapes that were clear, in either situation, an officer telling a jury what was being said and what was being done, especially on an audio tape, something that can't be seen, is prejudicial. So in other words, you don't dispute that it's accurate. You haven't said a single thing in your brief for today that says that anything he said was inaccurate. I'm not sure on that point, Your Honor. I cannot be specific on whether or not what he says was accurate or not. What I can say is that things like this, then I believe you hear the informant say, Hello, Patty. I mean, he says yes. Why are these things being bore out to a jury that is supposedly able to perceive it for themselves? These types of things, I feel like the officer pointed out and made clear because they were not accurate on tape and perhaps was trying to sway the jury to perceive things and interpret things his way. And that happened again with Officer Atkins. Only Officer Atkins got a cautionary instruction and admonishment. As far as that goes, I mean, the rule does say that the officer is allowed to testify as to matters that are relevant and helpful in helping the trier of fact to come to a conclusion about something that they're looking at that might not be clear. I don't think that's what was happening in this case. The questionings were extremely leading. He didn't really answer questions with his own words. He just answered yes or no to things that Mr. Pat or Mr. Prosecutor was saying. And so let me see here. And I guess that the only thing that I can point to as far as in hoping that the court can see what the trial court was thinking is the fact that they did admonish in Officer Atkins' testimony where they did not in Officer Hamilton's testimony. And why they would do that makes no sense unless they weren't relying heavily on his testimony during the narration and interpretation of the tapes. So specifically what I can say as far as truthfulness and not truthfulness is that the tape itself is the best evidence. It should have spoke for itself. It shouldn't have had two officers narrating and interpreting what it meant. Moreover, the only goal there, I suppose, would be for the prosecutor to be able to call two officers versus a drug addict who was charged with a felony and was high while he was giving his testimony. I mean, it makes sense that he would want to get his testimony through officers versus the person who was actually there. Counsel, what are we to make of the fact that the defendant objected only to the second video and not the first video? Does that mean that we should look at the June 9th video that was not objected to on plain error review? All of the all of the testimony was objected to. Specifically, if you're speaking to the government's argument that the I believe it was the June 9th tape that wasn't. Basically, he the government argues that it was not objected to, but at page 20 in the direct examination of Officer Hamilton on line 18, all the way through line 5 of page 21, there is a substantial objection to Officer Hamilton's narration of what's going on. Specifically, your honor, I have a couple of objections. First one is comment that he's commonly known to do this with the bag. Well, that's what that was. That wasn't a general objection, not not specifically to the June 9th video. I think he had an ongoing objection to the June. I don't know if it was specific to the June 9th video. However, I think he had and I know he had ongoing objection from the from the time leading up to this specific objection on page 20. So it wasn't accurate that he wasn't objected to. He was objected to on several situations as far as the videos are concerned. And question is whether there was an objection as to narration and there couldn't be an ongoing objection to that. You couldn't object to that until it actually occurred. Well, there was an ongoing objection to Officer Atkins and Officer Hamilton's testimony. And the reasoning behind the ongoing objection was that the court kept saying that the actual perception of the officer, as long as it's his perception, we'll go with that, but we'll take note of the ongoing objection. So and it was specifically objected to the narration at line 24. Judge, the other the other issues I have are that this officer narrated what was said and narrated what was happening. And I think the video itself and the audio from the video will be the best evidence without its interpretations. That's line 20 of Officer Hamilton's transcript. All right. Good morning, may it please the court. John Grant for the United States. If I could just clear up a few things quickly. The lines that she's reading from, that's after the first tape was played. And before the first tape was played, the objection was strictly to authenticity. There was no objection. And then the Officer Hamilton gave the testimony that they now object to on appeal. And then near the conclusion, actually after all the narration of the second video was done, that's when the objection that she just now is talking about was raised. So there was no contemporaneous objection that parallels what they're arguing in their brief. So it would be a plaintiff review. But just to clarify a couple of other things, she talks about Officer Atkins. There's no issue on the appeal relating to Officer Atkins in his testimony. So that would be barred for consideration. They also fault the court for failing to give a cautionary instruction for Officer Hamilton as the court did for Officer Atkins. They never asked for a cautionary instruction. And when the final jury instructions were tendered to the parties, the judge asked for any objections. And those instructions did have the cautionary instruction for the second officer, with no mention of Officer Hamilton. They didn't ask for it then. And not only that, they said that the instructions were fine. So they've waived any argument because they told the judge they were fine. So they've waived that. Perhaps the most important point, Judge McKeague, as you've brought up, is the evidence indeed was overwhelming. The jury deliberated for a little bit over an hour. And you had two officers who testified. The videos were played. And the informants went in, even if we didn't have any videos. They searched the car. They gave the buy money to the informants. The informants went to the location. Made the transactions. Came back out. Gave the drugs to the officer. You had this search that occurred. After these five transactions, these controlled buys happened. And there was hundreds of pills that were found in the defendant's bedroom. It was a padlocked room. There were, I believe, 13 firearms that were found near the stash of the pills. One of the informants had testified that he had witnessed the defendant one night when a customer came to the house past the time that the defendant permitted people to come and buy drugs. And the defendant pulled a gun and pointed at the customer and told him he was showing up too late. The confidential informant also testified numerous times. He had seen the defendant with firearms. It was common practice for the defendant to trade firearms for pills. So, indeed, the evidence was overwhelming. I don't even think the court really would need to address the error because it's really a moot point given how the evidence was so overwhelming that the error could not possibly have affected the jury's determination in this case. If there are no further questions, the United States would yield its time. All right. Thank you very much. Anybody? I just have a couple of points. As far as responding to the court not being responsible for giving an instruction, in Thomas, as I stated, the court is responsible for not allowing the jury to hear unreliable evidence. And the court made their point that they did not feel like the evidence was reliable when they admonished Officer Atkins and gave an instruction for Officer Atkins, who, in fact, gave the same type of testimony that Officer Hamilton did, only they did not admonish and give an instruction. As far as the overwhelming… You keep talking about Officer Atkins, and at least according to your fellow counsel, Mr. Grant, Officer Atkins' testimony isn't an issue in this appeal. I believe Officer Atkins was an issue, Your Honor, and at the… I'm not asking if it was an issue at the trial. Did you appeal based on anything to do with Officer Atkins' testimony? Specifically, I do not feel like the argument was articulated well enough. I do feel like it should have been articulated a little better as far as, yes, Officer Atkins was qualified as an expert. It just was a little ambiguous as to the fact that Officer Atkins was not qualified as an expert to testify to videotape or audio tape recordings. Just looking at the table of contents in your brief, Issues 1 and 2 deal with Officer Hamilton. You are correct, Your Honor. There's no mention of Atkins. You are correct, Your Honor. I did not write this brief, but as far as making a clarifying point on Mr. Atkins' testimony, it's just that the court showed their willingness to not rely on that testimony wholly by giving cautionary instruction. And with Mr. Hamilton, should have given a cautionary instruction there as well, in my opinion, due to the fact that Thomas not only tells the court you can't give unreliable evidence to a jury… So you stand up, not you, but your client's lawyer, and says the instructions are satisfactory. Haven't you then waived any argument about failure to give an instruction that, one, you didn't ask for, and, two, you said the rest of the instructions are fine? I'd say technically, but… Well, that's kind of what we do here. Well, yes, sir, but according to precedent, the court does have a duty to keep unreliable evidence from the jury. And in this case, I feel like they did not fulfill that duty. How is giving a cautionary instruction keeping unreliable evidence from a jury? You're conflating two things. They did not give the cautionary instruction for Officer Hamilton. But giving a cautionary instruction doesn't keep something that's unreliable from a jury. That's an admissibility question. The cautionary instruction just tells the jury what to do or not to do with that unreliable information, in my opinion. I agree. And the last thing I had to say, Your Honor, was the credibility of the witness does not create harmless error here. The harmless error that the United States speaks about, you know, if all we have is a drug addict who's charged with a felony, giving these testimonies, which should have been what the case was, I don't believe that that rises to the level of harmless error. So I think it's much more damaging than that. Don't we have to consider what was in the tapes? Yes. So it's not just the drug addict. It's also the tapes, which the jury would have interpreted for themselves. But I do believe that the tapes were prejudiced by the officer's layperson testimony and not expert testimony because two officers testified to the factual circumstances inside these tapes, which were supposedly able to bear out, you know, according to the court, the tapes bared out the facts wholly. So if that's the case, why these two officers were allowed to narrate and interpret these tapes as laypeople, I have no idea. All right. Thank you very much. The case is submitted.